UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

03 CV 12333 EFH

SPRINGFIELD TERMINAL RAILWAY
COMPANY,

        Plaintiff,

-v.-

INTERNATIONAL PAPER COMPANY
and
CHAMPION INTERNATIONAL
CORPORATION,

        Defendants.

MAGISTRATE JUDGE _____

Civil Action No. _____

AMOUNT $ _____ 5/899
SUMMONS ISSUED ___
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___

## Complaint

Springfield Terminal Railway Co. ("Springfield") complains of the defendants, International Paper Company ("IP") and Champion International Corporation ("Champion"), as follows:

1.    This is an action for damages resulting from the failure of the defendants to pay charges due and owing for the rail carriage of freight by Springfield.

2.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and under 28 U.S.C. § 1337 because this action arises under the Interstate Commerce Act, which is an Act of Congress regulating commerce.

3. Venue in this Court is proper under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Springfield's claim occurred in the District of Massachusetts.

4. Springfield is a Class II carrier providing interstate rail transportation under the rail provisions of the Interstate Commerce Act (currently codified as part A of subtitle IV of title 49 of the U.S. Code).

5. Springfield is incorporated in Vermont and has its principal place of business in Massachusetts.

6. IP and Champion are manufacturers of paper and other products, including printing paper.

7. IP is incorporated in New York and has its principal place of business in Connecticut or Tennessee.

8. Champion, which is wholly owned by IP, is incorporated in New York and has its principal place of business in Connecticut or Tennessee.

9. IP and Champion regularly and continuously transact business in Massachusetts.

10. For many years IP and Champion have shipped printing paper from a mill in Bucksport, Maine (the "Mill") to destinations throughout the United States using Springfield as its originating rail carrier.

11. These shipments are carried in boxcars.

12. With narrow exceptions not relevant here, the Interstate Commerce Act authorizes a rail carrier to establish "any rate for transportation . . . provided by the rail carrier."

13. At all times relevant to this action, printing paper has been exempt from regulation under the Interstate Commerce Act.

14. At all times relevant to this action, shipments carried in box cars have been exempt from regulation under the Interstate Commerce Act.

15. Effective March 6, 2000, Springfield duly placed in effect an increase of four percent in its joint through rates for all traffic originating on Springfield (the "Four Percent Increase"). This constituted an increase for the defendants of approximately $154 per car for shipments from the Mill.

16. On or about March 6, 2000, Springfield and the defendants agreed that if, and for so long as, the defendants paid a rate increase amounting to approximately four percent of the Springfield portion of the joint through rates, the defendants would be excused from paying the Four Percent Increase. This constituted an increase of sixty dollars per car (the "Sixty Dollar Increase").

17. The defendants paid the Sixty Dollar Increase for shipments made beginning in or about April 2000 until in or about December 2001 but have refused to pay the Sixty Dollar Increase since December 2001 despite repeated demands and invoicing therefor by Springfield.

18. Effective November 15, 2000, Springfield duly placed in effect a further increase of two percent in its joint through rates for all traffic originating on Springfield (the "Two Percent Increase"). This constituted a further increase for the defendants of approximately $80 per car for shipments from the Mill.

19. In or about November 2000, Springfield and the defendants agreed that if, and for so long as, the defendants paid a rate increase amounting to approximately two percent of the Springfield portion of the joint through rates, IP would be excused from the Two Percent Increase. This constituted a further increase of thirty dollars per car (the "Thirty Dollar Increase").

20. The defendants have continued to ship with Springfield but have failed and refused to pay the Thirty Dollar Increase despite repeated demands and invoicing therefor by Springfield.

21. Between November 15, 2000, which was the effective date of the Two Percent Increase and the Thirty Dollar Increase, and May 2003, the defendants shipped thousands of carloads of paper from the Mill over Springfield's rail line. Several thousand such carloads were shipped after the defendants ceased paying the Sixty Dollar Increase in December 2001.

22. The Interstate Commerce Act and the bills of lading for the defendants' shipments in question require that the defendants pay the rate prescribed by Springfield for each shipment.

### First Cause of Action

23. Springfield repeats and realleges paragraphs 1 through 22 as if set forth fully here.

24. The defendants failed and refused to pay the Thirty Dollar Increase for the approximately 10,000 carloads of printing paper shipped with Springfield between November 15, 2000 and May 2003.

25. The defendants also failed and refused to pay the additional Sixty Dollar Increase for the approximately 5300 carloads of printing paper shipped with Springfield between December 2001 and May 2003.

26. Springfield is entitled to recover all such unpaid sums, with interest from the time each shipment was made, under 49 U.S.C. § 11705(a).

### Second Cause of Action

27. Springfield repeats and realleges paragraphs 1 through 26 as if set forth fully here.

28. If the Sixty Dollar Increase failed to become effective, or ceased to be effective at any time, the defendants thereafter were subject to Springfield's general increase to joint through

rates for its outbound shipments, including the Four Percent Increase, for outbound shipments made on and after March 6, 2000.

29. If the Thirty Dollar Increase failed to become effective, or ceased to be effective at any time, the defendants thereafter were subject to Springfield's additional general increase to joint through rates for the defendants' outbound shipments, including the Two Percent Increase, for outbound shipments made on and after November 15, 2000.

30. The defendants have not paid the full sums required under Springfield's joint through rates for certain shipments made by the defendants from the Mill on or after March 6, 2000.

31. Springfield is entitled to recover all such unpaid sums, with interest from the time each shipment was made, pursuant to 49 U.S.C. § 11705(a).

WHEREFORE, Springfield demands judgment against the defendants in an amount to be proven at trial, plus interest, attorneys' fees and costs.

Respectfully submitted,

/s/ Robert B. Culliford

Robert B. Culliford (BBO #638468)
Guilford Rail System
Iron Horse Park
North Billerica MA 01862
978-663-1029
rculliford@guilfordrail.com

Eric L. Hirschhorn
Winston & Strawn
1400 L Street, N.W.
Washington DC 20005
202-371-5706
ehirschhorn@winston.com

*Attorneys for Plaintiff Springfield Terminal Railway Company*

November 19, 2003.